**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 18, 2013

No. 12-20107

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KENDRICK BAKER,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CR-252-1

Before JONES, BARKSDALE, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A jury found Kendrick Baker guilty on 16 counts of willfully aiding and assisting in the preparation and presentation of false tax returns. On appeal, Baker contends the Government engaged in purposeful race discrimination in selecting jurors. He also claims error in the admission of certain evidence and that the evidence was insufficient to support the convictions.

We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20107

## DISCUSSION

In March 2011, a federal grand jury indicted Kendrick Baker for violating 26 U.S.C. § 7206(2). The charge against Baker involved professional tax-return services he provided to eight individuals between January 2006 and January 2008 near Houston, Texas. He allegedly made false statements of expenses to increase the amount of the individuals' tax returns. Baker was tried by a jury in the United States District Court for the Southern District of Texas and found guilty. He timely appealed.

*A.* Batson *Challenge*

Baker objected to the Government's use of its peremptory strikes against certain potential jurors, arguing to the court that the Government rejected two Hispanic veniremen because of their ethnicity. *See Batson v. Kentucky*, 476 U.S. 79 (1986). A *Batson* challenge involves three procedural steps: (1) the "defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race"; (2) the Government "must offer a race-neutral basis" for the strike; and (3) "the trial court must determine whether the defendant has shown purposeful discrimination." *Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008). "The ultimate burden of persuasion always lies with the party making the claim of purposeful discrimination." *United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (5th Cir. 1993).

Baker, who is African-American, argued there were no race-neutral reasons for the Government's peremptory strikes of two Hispanic veniremen and a third of an uncertain racial minority. The Government responded that the two Hispanic venire members had "disclosure problems" on their juror-questionnaire

forms.[1]   Baker countered that the Government did not request further information from these two members of the venire and that non-minority prospective jurors with similar omissions on their forms were not struck from the panel.

The Government informed the court that race was not a reason for the strikes.  The prosecutor pointed out that he did not strike other minorities.  In analyzing the objection, the district court assumed that Baker had established a *prima facie* case of discrimination.  The court then found the Government had provided a race-neutral explanation and overruled the challenge.

The Government does not challenge the district court's finding of a *prima facie* case, and Baker concedes the Government offered a race-neutral explanation.   This appeal therefore involves only whether purposeful discrimination was shown.  The district court has to evaluate the credibility of a prosecutor's explanation, "and the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge."  *Snyder*, 552 U.S. at 477 (citation and quotation marks omitted).

The determination of whether there was intentional discrimination "is a fact finding, which is accorded great deference."  *United States v. Causey*, 185 F.3d 407, 413 (5th Cir. 1999).  We review this finding for clear error and reverse if we are "left with the definite and firm conviction that a mistake has been committed."  *United States v. Williams*, 610 F.3d 271, 281 (5th Cir. 2010) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

---

[1] The Government explained that the third venire member was struck because of previous reasons presented to the court in a discussion regarding a strike for cause.  On appeal, Baker makes no argument regarding the third prospective juror, thus waiving any issue.

No. 12-20107

In this fact-finding of why certain potential jurors were struck, we do not have a firm conviction that the district court made a mistake. *See United States v. Montgomery*, 210 F.3d 446, 454 (5th Cir. 2000). We find no error.

*B. Sufficiency of the Evidence*

Baker renewed a motion for judgment of acquittal at the close of all the evidence, arguing there was insufficient proof that the tax returns were "false as to any material matter." We review the district court's denial of that motion *de novo*. *United States v. Mudekunye*, 646 F.3d 281, 285 (5th Cir. 2011). Viewing all evidence in a "light most favorable to the verdict," we affirm "if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt." *Id.*

A conviction under Section 7206(2) requires the Government to prove "the defendant willfully aided . . . another in the preparation or presentation under the internal revenue laws of a document that is fraudulent or false as to any material matter." *United States v. Clark*, 577 F.3d 273, 285 (5th Cir. 2009). We reject Baker's premise that the Government must prove the entries on the tax returns were false according to tax law. Although in some cases expert testimony might be required to substantiate the Government's prosecution, this case does not turn on the niceties of arcane tax law. It is sufficient to prove falsity if the return contains a loss that was "neither substantiated nor requested." *Mudekunye*, 646 F.3d at 286.

The indictment charged Baker based on tax-preparation services he provided to eight individuals on 16 separate tax returns. At trial, testimony from all eight taxpayers revealed that each return contained an expense the individual did not incur and that no such expense was ever communicated to

4

Baker.  Accordingly, a reasonable juror could determine beyond a reasonable doubt that each of the 16 tax returns was false as to a material matter.

*C. Admissibility of the Evidence*

Over Baker's objection, the district court admitted evidence of Baker preparing a tax return for an undercover investigator.  This preparation was not the basis of any count in the indictment.  Baker argued the evidence was inadmissible under Federal Rule of Evidence 404.  The district court determined the evidence was relevant to establish Baker's intent and that the probative value was not substantially outweighed by the risk of undue prejudice.

We review the district court's decision to admit evidence of Baker's other acts for abuse of discretion.  *See United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008).  This evidence "must be strictly relevant to the particular offense charged."  *Id.*  We do not reverse if the Government proves beyond a reasonable doubt that any error is harmless.  *Id.*

In determining admissibility of evidence of other bad acts under Rule 404(b), a court must decide if such extrinsic evidence (1) "is relevant to an issue other than the defendant's character," and (2) "possess[es] probative value that is not substantially outweighed by its undue prejudice."[2]  *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978).

Baker's indictment relied on 16 tax returns that spanned the tax years of 2005 through 2007.  The earliest return was filed on January 26, 2006, and the latest was filed on January 28, 2008.  Baker prepared the undercover investigator's tax return on February 7, 2008. According to Baker, the admitted tape recording revealed that he properly prepared the tax return but then

---

[2] There is no argument that this evidence was intrinsic to the charged crime.

altered the document with false entries without obtaining further information from the investigator.

The Government was required to prove Baker acted willfully and not as the result of a mistake. *Clark*, 577 F.3d at 285. Baker pled not guilty and argued that the Government would not prove the requisite state of mind and an absence of mistake beyond a reasonable doubt. Thus, the evidence was relevant to an issue other than Baker's character. *See McCall*, 553 F.3d at 827-28.

Probative "value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence." *Beechum*, 582 F.2d at 914. Here, the evidence carried more than the minimal value that Baker suggests. In addition to consistently challenging the Government's ability to prove his state of mind, part of Baker's defense was that he obtained information about the taxpayers and used it to calculate the expenses. He contended that if a return contained a false entry, it was because of what the taxpayer conveyed to Baker. The taxpayers testified to the contrary, claiming they never told Baker they incurred listed expenses. Baker countered that they signed the documents and certified their accuracy. Therefore, evidence that Baker did not rely on the investigator's information to alter entries days later provided circumstantial support for a finding that Baker *willfully* entered false expenses on the previous 16 tax returns. Any potential undue prejudice of this relevant evidence was lessened by the court's giving a limiting instruction to the jury. *See United States v. Crawley*, 533 F.3d 349, 355 (5th Cir. 2008).

Based on this record, we cannot say the district court abused its discretion in admitting evidence of the undercover investigation.

AFFIRMED.